ECF CASE
JUDGE DANIELS

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

**JOE HAND PROMOTIONS, INC.** , as
Broadcast Licensee of the **June 11, 2005**
**Tyson/McBride** Program,

Plaintiff,

   -against-

                             **Plaintiff's Affidavit for Default**
                             Civil Action No. 07-CV-6907
                             HON. GEORGE B. DANIELS

RICARDO MARTINEZ, *et al.*,
                   Defendants.
-----------------------------------------------------------------

COMMONWEALTH OF PENNSYLVANIA)
                          ) ss.:
COUNTY OF BUCKS            )

      JOE HAND, JR., being duly sworn, deposes and states the following:

1.     I am President of Plaintiff, Joe Hand Promotions, Inc., and as such am fully familiar with the facts, circumstances and proceedings heretofore had herein.

2.     I make this affidavit in support of Plaintiff's request to recover statutory damages, including litigation fees, investigative costs, and interest in the within request for judgment by default.

3.     The Plaintiff purchased the territorial rights to exhibit the Tyson/McBride fight which was held on June 11, 2005. Our company thereafter marketed the sub-licensing of the broadcast in the State of Louisiana for a fee. The agreement for exclusive rights to distribute the said fight is attached hereto as Exhibit "A." The rate card for commercial establishments is attached hereto as Exhibit "B."

4.      To explain the history of Plaintiff's claim, your deponent submits that shortly after the advent of Pay-Per-View broadcasts, of which our company stands at the forefront, we began to experience a serious erosion of the sales to commercial establishments throughout the United States of America. Thereafter, we endeavored to find out what was the basis for the erosion. Much to our disappointment, we discovered the root cause to be the piracy of our broadcasts by unauthorized and unlicensed establishments.

5.      In response, we embarked upon a program which was designed to identify and prosecute commercial establishments which stole our broadcasts.

6.      Joe Hand Promotions, Inc., obtained information from auditors who identified establishments that unlawfully exhibited our Program.

7.      Prior to the Tyson/McBride broadcast, Joe Hand Promotions, Inc., hired Signal Auditing, Inc. to contract with independent auditors who were assigned to identify establishments that unlawfully exhibited our Program.

8.      To insure that only illegal locations were visited by the auditors, a list of authorized and legal locations who paid the required fee to broadcast the Tyson/McBride fight which was held on June 11, 2005, was distributed to Signal Auditing, Inc., who, in turn, provided same to all of their contracting auditors prior to visiting any unauthorized locations on June 11, 2005. This list for the State of Louisiana is attached hereto as Exhibit "C".

9.      Defendant, RICARDO MARTINEZ, Individually and d/b/a LUCKY 7, did not purchase the rights to exhibit the event from my company.

10.     According to our files, Edgardo Rodriguez, one of the auditors,

visited Defendant's establishment, Lucky 7, located at 658 Prospect Avenue, Bronx, NY,

at approximately 9:25 p.m., on February 3, 2007. He entered and observed one (1)

television sets exhibiting a portion of the event to about 25 patrons in an establishment

with a capacity of 100. The auditor's affidavit attesting to these facts is attached as Exhibit

"D."

12.     We operate a family business which has paid millions of dollars for the rights to

sell sub-licenses for boxing broadcasts and, with the increased frequency of signal piracy,

our legal sales have eroded significantly.

13.     I have recently been informed, by a member of a bar owners association with

whom I was conversing, and who was previously a legal customer, that he would no

longer be purchasing the fights from my company at the legal broadcast rate. He said it

was not out of disrespect for me or my family but sooner risk being caught as a pirate

believing that even if he defaults the Court would only grant a small monetary judgment

that would be difficult, if not impossible to collect upon. I was astounded at the brazen

disregard such individuals have for the law not to mention the rights of my company.

14.     It is essential that I communicate to the Court that to the best of my knowledge

this programming is not and cannot be "mistakenly or innocently intercepted." Some

methods that a signal pirate can unlawfully intercept and broadcast such program

illegally are as follows without limitation:

> A.     The use of a "blackbox" which is purchased for a fee and when
> installed on a cable TV line will allow for the descrambled reception of a
> pay-per-view broadcast, or
>
> B.     The purposeful misrepresentation of a commercial establishment
> as a residential property would  allow the purchase of a pay-per-view

broadcast between the sum of $25.00 and $50.00, or

C.    The use of a illegal cable drop or splice from an apartment or home adjacent to the commercial establishment premises who would purchase the broadcast at a residential price and divert the program to the commercial establishment and/or

D.    The same initial actions being employed with respect to a "DSS Satellite Systems" or a "C-Band Satellite System."

These forms of satellite theft also involve the misrepresentation of a residential location, purchase of illegal unincryption devices, and/or the purchase of illegal satellite authorization codes which are readily available on the internet and in trade publications. Attached hereto and made a part hereof are various examples of same.

15.    Turning these facts to the matter before the Court I have been advised by counsel that the Court has the discretion in the awarding of damages for these nefarious and illegal activities.

16.    It is respectfully submitted to this honorable Court that the unchecked activity of signal piracy not only has resulted in my family's business suffering monumental damage, but also has a negative effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs are necessarily increased significantly by these illegal activities.

17.    We, at Joe Hand Promotions, Inc., believe that such acts of piracy have cost us millions of dollars in the last few years while at the same time causing a reduction in our lawful business resulting from the perceived lack of consequence for such unlawful interception.

18.    I therefore, humbly ask this Court to grant the allowance for statutory damages due to the fact that such actions are *per se* intentional and do not and cannot occur without the willful and intentional modification of electronic equipment, the business

misrepresentation of a commercial establishment as a residential one or, the removal of

cable traps or devices designed to prevent such unauthorized exhibits.

**WHEREFORE,** your deponent respectfully requests that this Court in its discretion grant judgment by default under 605(a) on COUNT I of the Plaintiff's complaint against the Defendants jointly and severally as follows:

## Against RICARDO MARTINEZ Individually,

1)  under 605(e)(3)(C)(i)(II) a sum *in the discretion of the Court*, <u>of up</u> to TEN THOUSAND DOLLARS ($10,000.00)

2)  and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of <u>up to</u> ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3)  and under 605(e)(3)(B)(I) *in the discretion of the Court*, full costs, reasonable attorney fees as set forth in the attorney affidavit.

## Against, LUCKY 7,

1)  under 605(e)(3)(C)(i)(II) a sum *in the discretion of the Court*, <u>of up</u> to TEN THOUSAND DOLLARS ($10,000.00)

2)  and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of <u>up to</u> ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3)  and under 605(e)(3)(B)(I) *in the discretion of the Court*, full costs, reasonable attorney fees as set forth in the attorney affidavit

Dated: September 18th 2007

JOE HAND JR.
President, Joe Hand Promotions, Inc.

Sworn to before me on this 18th day
Of September, 2007.

Notary Public- State of Pennsylvania

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARGARET H. CICALESE, Notary Public
Lower Southampton Twp., Bucks County
My Commission Expires March 3, 2009

Exhibit A

# AGREEMENT
# MIKE TYSON BOUT
## June 11, 2005
### Submitted by Joe Hand, Jr., President
### Joe Hand Promotions, Inc.
### April 4, 2005

## INTRODUCTION

### Joe Hand Promotions, Inc. (JHP)

Our company is the largest closed-circuit commercial distributor in the United States with the capability to promote, administer and market closed-circuit events. We were the first to exhibit closed-circuit boxing events into racetracks, baseball stadiums, basketball arenas, correctional institutions, colleges and to our armed forces. The administration and control are a major part of the success of our closed-circuit promotion and no other company in the industry comes close to our administrative manpower and resources.

## GRANT OF RIGHT

JHP proposes to exclusively administrate the closed-circuit commercial distribution of the June 11, 2005 Mike Tyson fight. The territory will be described as the United States, its Possessions and Territories, Canada, Puerto Rico and the territory listed on Exhibit "A" of this agreement proposal.

## ADMINISTRATION.

JHP will prepare all documentation necessary to meet the legal requirements of the closed-circuit distribution, including but not limited to:

* Preparing licenses and technical documentation for each location,

* Distribution of marketing and promotional materials,

* Collection of all funds and preparation of sales and revenue reports in a timely and orderly fashion.

# MARKETING

## Sales

JEP will utilize marketing materials (posters, ad slicks, press kits, etc.) provided by SHOWTIME (if available). These materials will be used to maximize customer awareness of the June 11, 2005 Mike Tyson Fight.

JEP will provide direct marketing, such as mailing pieces, blast faxes, bulk e-mails and other forms of advertising to create awareness of the program.

JEP maintains a residence sales force of 12 people at our Feasterville location and plans to utilize other companies throughout the country that will assist in selling this program. Sales personnel are provided with complete documentation on potential customers including, names, locations, buying history, size of establishment, etc, in order to help them complete the sale.

It is our intention to utilize the service of other regional closed circuit distributors to maximize the sales and distribution efforts on this program. Any such company will be bound under the same terms and conditions listed in any contract between JEP and SHOWTIME.

## Security and Audit

JEP will make a concerted effort to discourage the theft of service. In an effort to protect our closed circuit broadcast rights, JEP will coordinate and finance its own piracy program. JEP will retain all revenue generated from said piracy campaign.

---

# MUTUAL OBLIGATIONS

## SHOWTIME

SHOWTIME will provide JEP with reasonable quantities of promotional materials including posters, ad slicks and press kits, if available.

For digital dish commercial customers, SHOWTIME will grant JEP permission to enter into agreements with DirecTV and Dish Network in act as authorization sources for its commercial location customers utilizing that technology to broadcast the event. In some instances, JEP will ask SHOWTIME to assist in its

negotiations with these digital authorization sources in order to reach an agreement on terms for authorizing the requested commercial account.

For *cable feed commercial customers*: SHOWTIME will grant JHF the right to enter into agreements with individual cable system operators to act as authorization sources for its commercial customers utilizing that technology to broadcast the event.

## JOE HAND PROMOTIONS

JHF will be responsible for all duties and obligations as outlined in this agreement.

---

## FINANCIAL

As compensation for these exclusive rights, JHF will pay SHOWTIME ~~████████~~ ~~████~~ of all revenues (less local & state taxes).

Prepared by:

_signature_

Joe Hand Promotions
407 E. Pennsylvania Blvd.
Feasterville, PA 19053
215-364-9000 phone
215-364-5474 fax
joeh@joehandpromotions.com

Agreed to & Accepted by:

_signature_

Showtime Networks Inc.
1633 Broadway
New York, NY 10019
212-708-1289 phone

Jodie.McLean@showtime.net

ov



www.boxingseries.com
**SPORTS PRODUCTIONS INC.**
1-888-256-7116

June 25, 2005

Joe Hand Promotions, Inc.
407 East Pennsylvania Avenue
Feasterville, Pennsylvania 19053

Attn: Joe Hand, Jr

Re: Gatti vs. Mayweather
June 25, 2005

Dear Joe:

This will confirm the terms of our agreement whereby J & J Sports Productions, Inc. ("J&J" or "Promoter") for consideration, hereby grants to you ("you" or "licensee") the right to license, market, exhibit and sell, only within your defined territory within the United States of America (the "territory"), promoter's live telecast of the June 25, 2005 Gatti v. Mayweather program and accompanying undercard matches (each a "program" or "event"), simultaneously with each event, only at commercial closed circuit television exhibition outlets, such as theaters, bars, clubs, lounges, restaurants and the like, each with a fire code occupancy capacity not to exceed 500 persons per outlet (except for casinos), located within the territory. Your territory shall include the following:

Connecticut, Delaware, District of Columbia, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Vermont, Virginia, West Virginia and Wisconsin.

These rights also include the anti-piracy rights, including but not limited to the rights to resolve claims and commence litigation against any identified pirate showing any portion of the "program" without purchasing the license to exhibit same from you or any approved licensee of J & J Sports Productions, Inc.

Joe Hand Promotions
Feasterville, Pennsylvania.
Page 2 of two

Very truly yours,

J & J Sports Productions, Inc.

Joseph Gagliardi
President

JG:e

Exhibit B

# *Mike Tyson*

### (50-5, 44KO's)
### Vs

# *Kevin McBride*

### (32-4-1, 27KO's)

## LIVE ON CLOSED CIRCUIT TV

# Saturday, June 11, 2005

## Live from MCI Center – Washington DC
### *(blackout in effect)*
## 9:00 pm ET

Undercard Featuring the sensational Laila Ali

## RATECARD

# $10.00 x's fire code capacity

# $20.00 per person for casinos

### *(Plus $200 DirecTV Authorization Fee)*

## Call Joe Hand Promotions to order!

# 800-557-4263

Visit our website at www.joehandpromotions.com

Exhibit C

| Name | Address | City | State | Zip | | Date |
|---|---|---|---|---|---|---|
| Williams @ Albany | 59 N. Pearl St. | Albany | NY | 12007 | | |
| Williams @ Albany | 59 N. Pearl St. | Albany | NY | 12207 | | |
| Williams | 59 North Pearl St. | Albany | NY | 11101 | FALSE | 6/11/2005 |
| Williams | 34-19 Steinway St. | Astoria | NY | 11105 | FALSE | 6/11/2005 |
| Forum | 3550 Ditmars Blvd | Astoria | NY | 11217 | | |
| McClains | 200 5th Ave. | Brooklyn | NY | 11217 | | |
| 200 Fifth | 200 5th Ave. | Brooklyn | NY | 11789 | FALSE | 6/11/2005 |
| Williams @ Farmingdale | 281 Airport Plaza Blvd. | Farmingdale | NY | 11350 | FALSE | 6/11/2005 |
| Abdelo Guznin | 33-31 1B1 Street | Flushing | NY | 11767 | FALSE | 6/11/2005 |
| Dukes Neutral Corner | 710 5th. St. | Lindenhurst | NY | 10010 | FALSE | 6/11/2005 |
| 40-40 Club | 6 West 25th St. | New York | NY | 10022 | FALSE | 6/11/2005 |
| Cindy's @ New York | 74 Third Ave. | New York | NY | 10003 | FALSE | 6/11/2005 |
| Nevada Smiths | 74 Third Ave. | New York | NY | 10010 | FALSE | 6/11/2005 |
| Playwright | 202 W. 45th St. | New York | NY | 10022 | FALSE | 6/11/2005 |
| Stones @ New York East | 533 East 50th Street | New York | NY | 10001 | FALSE | 6/11/2005 |
| Stones @ West | 683 West 27th St. | New York | NY | 10026 | FALSE | 6/11/2005 |
| Ship O Fools | 1890 Second Ave. | New York | NY | 14304 | | |
| Jacos | 7202 Buffalo Ave. | Niagara Falls | NY | 14309 | FALSE | 6/11/2005 |
| Playate of Niagara | 936 Niagara St. | Niagara Falls | NY | 11770 | | |
| Sun Mann @ Sians | 210 Banwalk | Ocean Beach | NY | 14508 | FALSE | 6/11/2005 |
| Nathaniels | 221 Exchange Blvd. | Rockawier | NY | 10309 | | |
| Lions Den Sports Bar | 177 Faye Ave. | Staten Island | NY | 10309 | | |
| Lions Den Sports Bar | 77 Pase Ave. | Staten Island | NY | 11104 | FALSE | 6/11/2005 |
| Full of Fun | 4126 Greenlight Ave. | Sunnyside | NY | 14224 | FALSE | 6/11/2005 |
| Dulls | 3080 Orchard Park Rd. | West Seneca | NY | 11590 | FALSE | 6/11/2005 |
| Williams @ Wesbury | 1604 Old Country Rd. | Westbury | NY | 10704 | FALSE | 6/11/2005 |
| Conts Tavern | 1044 Yonkers Ave. | Yonkers | NY | | | |

Exhibit D

## PIRACY AFFIDAVIT

STATE OF NEW YORK :

COUNTY OF NEW YORK :

     I, Edgardo Rodriguez, the undersigned, being duly sworn according to law, deposes and says, that on Saturday, June 11, 2005, , I observed and the commercial establishment known as, LUCKY 7, located at 658 Dawson Street (F7 BRONX, N.Y. 10455, at approximately 09:25 p.m. This establishment is described as a 4 story building with numerous apartments on top of the establishment.

     I observed 01 television set, showing the event, which is described and located as follows: A 32 inch color television set behind the bar and in the center.

The television set I observed showed the following: The lower right of the screen showed 2:20 left in round 3 of the Smith an Mitchell fight. Smith is wearing red trunks and black gloves. Mitchell is wearing black and gold trunks with black gloves. Both men are fighting in a blue boxing ring with red, white, and blue ropes.

I was unable to see the cable box or the channel that the television was tuned to.

The inside of the establishment and its internal layout can be described as: A typical licensed establishment that serves alcohol, with chairs and tables.

DRAW DIAGRAM OF INSIDE OF ESTABLISHMENT:



In my opinion, the approximate capacity of this establishment is 100 people. At the time I was in the establishment, I took three head counts. I counted approximately 25 people on the first count, 25 people on the second count, and 25 people on the third count.

I left the establishment at approximately 09:30 p.m.

I took two (2) pictures of the outside of the above described establishment on Tuesday, June 14, 2005 at approximately 8:00 a.m. which are attached hereto and made a part hereof and are intended to substantiate and verify the location of my observations as described herein.

There was not a parking lot adjacent to the establishment.

Dated: _6_/_20_____, 2005

Signed: _____

Print Name: Edgardo Rodriguez

Agency:

Address:      218 Grange Road

City/State/Zip: Otisville, NY 10963

Phone/fax:    (646) 423-2354

State of New York:

County of New York:

On the 20th day of June_____, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared, Edgardo Rodriguez,  personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

RAFAEL A. CAPELLAN
Notary Public, State of New York
Reg. No. 01CA6077760
Qualified in Orange County
My Commission Expires July 15, 2006



DSC01300.JPG



A



B

DSC01306.JPG