ECF CASE
JUDGE DOLINGER

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

**JOE HAND PROMOTIONS, INC.,** as
Broadcast Licensee of the **June 11, 2005**
**Tyson/McBride Program**

                                         **PLAINTIFF'S MEMORANDUM OF**
                                         **LAW IN SUPPORT OF DAMAGES**
      -against-                        Civil Action No. 07-CV-6907

RICARDO MARTINEZ, Individually and d/b/a
LUCKY 7,

                               Defendants.
-----------------------------------------------------------------

        Plaintiff submits the following in support of its request for an award of damages against

the Defendants, RICARDO MARTINEZ, Individually and d/b/a LUCKY 7.

### BACKGROUND

        Plaintiff is the owner of the exclusive rights to distribute the June 11, 2005

Program, which were shown as a pay-per-view event in New York and other states, to commercial

establishments. (See Affidavit of Joe Hand Jr., President of Plaintiff, as Exhibit A.) In an effort to

combat piracy of said pay-per-view program, the Plaintiff contracted with an independent auditing

company to investigate commercial establishments that exhibited the June 11, 2005 Boxing Program

without authorization. Among the locations the auditors observed exhibiting the Program without

authority to do so was that of the Defendants Lucky 7. Defendants' display of the event was verified

by independent auditor Edgardo Rodriguez, attached to the Plaintiff's Affidavit. The auditor entered

the Defendant establishment around 9:25 pm, without paying a cover charge and saw one television

set exhibiting a portion the encrypted broadcast to approximately 25 individuals in an establishment

with a capacity of 100.

Plaintiff commenced the present action by filing a Summons and Complaint on July 31, 2007. Copies of the Summons and Complaint were served on Defendants August 18, 2007, as set forth in the proofs of service by William Morrison, which were filed with the Court on August 31, 2007, as ECF document No.5. Defendants never answered said Summons and Complaint. On October 5, 2007, Plaintiff filed a Request for Clerk's Entry of Default which was entered on or about October 5, 2007. A Motion for Default was filed on October 15, 2007. This matter was referred to your honor on, October 25, 2007, for an inquest on damages.

## NATURE OF DEFAULT

Defendants' default must be deemed an admission of the facts alleged in the complaint. Greyhound Exhibitgroup v. E.L.U.L. Realty Group, 973 F.2d 155 (2nd Cir. 1992). Plaintiff's complaint establishes the elements of liability required to state a claim under both 47 U.S.C. 553 and 47 U.S.C. 605. Under 553(a)(1) liability exists if a person intercepts or receives or assists in receiving any communication service over a cable system without authorization. Under 605(a) liability hinges on the interception of radio communications and its divulgence to any person. Defendants herein, by their default, have admitted that, without authorization from Plaintiff, they illegally intercepted the scrambled transmissions of the Program. Defendants have also admitted that knowingly and wilfully intercepting the programming, and offering it to patrons of the establishment for private financial gain or commercial advantage.

Plaintiff, by contract, was granted the right to distribute the boxing program scheduled for June 11, 2005, via closed circuit television. Pursuant to the aforesaid contract, Plaintiff entered into subsequent agreements with various entities in the State of New York, allowing them to publicly exhibit the program to their patrons. Plaintiff expended substantial monies in consideration of the

aforementioned agreement to transmit the said boxing match to those entities within the State of New York who had contracted for same with the Plaintiff for exhibition to their patrons.

The Defendants and/or his/its/their agents, servants, workmen or employees, with full knowledge that said closed circuit program was not to be received and/or exhibited by entities unauthorized to do so, did, at the time of its transmission, exhibit the closed circuit program at their principal place of business willfully, and for purposes of direct or indirect commercial advantage or private financial gain and with the intent of willfully defrauding Plaintiff of revenue.

The event in question originated via a satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. Under Cablevision v. Sykes, 75 F.3d 123 (2nd Cir. 1996) piracy of a signal originating this way is a violation of 605(a). Because Plaintiff distributed the event via closed circuit cable television, piracy of their signal is also a violation of 553(a)(1). Cablevision v. Sykes, 997 F.2d 998 (2nd Cir. 1993). Defendant must have either used an illegal satellite receiver to intercept Plaintiff's signal, or used an illegal cable converter box to intercept Plaintiff's broadcast. This establishes Defendants' liability under both 553 and 605. Entertainment by J&J v. Mama Zee, 2002 U.S. Dist. LEXIS 13686 (E.D.N.Y.).

## DAMAGES

When a Defendant is liable under both §§553 and 605 of the Federal Communications Act, Plaintiff can recover under only one section. Time Warner v. Taco Rapido, 988 F. Supp. 107 (E.D.N.Y. 1997). Plaintiff elects to recover under 605(a). A claimant who has established liability under 605(a) may elect between actual or statutory damages under 605(e)(3)(C)(i). Plaintiff elects for statutory damages pursuant to 605(e)(3)(D)(i)(II). Under 605(e)(3)(C)(ii) enhanced damages are available where the violation was willful and was committed for direct or indirect commercial

advantage or private financial gain. As the Defendants exhibited the event in a commercial

establishment, Plaintiff has pleaded the elements to establish a willful violation. Ent. By J&J v.

Mama Zee's, 2002 U.S. Dist. LEXIS 13686 (E.D.N.Y.).

Pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II), Defendants are indebted to Plaintiff for the

unlawful exhibition for commercial advantage of the closed circuit television signal of the Program

on May 3, 2003, in the sum of up to $10,000.00 in the discretion of the Court. Full statutory damages

of $10,000.00 were awarded in Cablevision v. Titan's, 1997 U.S. Dist. LEXIS 2363 (E.D.N.Y.).

In addition, pursuant to 47 U.S.C. §605(e)(3)(C)(ii) Plaintiff is entitled to an additional

statutory damage amount of up to $100,000.00 in the discretion of the Court for the intentional

unlawful interception of the closed circuit television signal of the program. Enhanced damages under

this provision were awarded in the following cases: Ent. By J&J v. Mama Zee's, 2002 U.S. Dist.

LEXIS 13686 (E.D.N.Y.) ($10,000.00 in enhanced damages), Time Warner Cable v. Taco Rapido

Rest., 988 F. Supp. 107 (E.D.N.Y. 1997) ($5,000 in enhanced damages), Cablevision v. Titan's, 1997

U.S. Dist. LEXIS 23663 (E.D.N.Y.) ($5,000 in enhanced damages), Cablevisions v. Maxie's, 1991

U.S. Dist. LEXIS 4874 (E.D.N.Y.) ($25,000 in enhanced damages).

The amount of damages to be awarded rests in the sound discretion of the court pursuant to

605(e)(3)(C)(i)(II). In published cases in the Eastern District of New York, damages have been

estimated based on a patron count multiplied by $50 while in the Southern District the amount has

been $300.00 per patron. Taco Rapido and Mama Zee, citing Kingvision v. Prime Time Saloon, 95

Civ. 1422 (E.D.N.Y.), Cablevision v. Midland, 858 F.Supp. 42 (S.D.N.Y. 1994) used $50 while

Garden City Boxing Club v. Alicia, 04-2084 (S.D.N.Y.) and Garden City Boxing Club v. Martinez,

04-1907 (S.D.N.Y.), Cablevision v. Cateras, 1998 U.S. Dist. LEXIS 22675 (S.D.N.Y.), New

Contenders v. Diaz, 1997 U.S. Dist. LEXIS 13132 (S.D.N.Y.), Cablevision v. Midland. 858 F. Supp.

42 (S.D.N.Y. 1994), Cablevision v. Allerton, 1997 U.S. Dist. LEXIS 3553 (S.D.N.Y.) each used $300 per patron.

In other cases in the Eastern District the Judge simply states an amount. In Cablevision v. Roopnarain, 2002 U.S. Dist. LEXIS 8802 (E.D.N.Y) and Main Events v. Batista, 1998 U.S. Dist. LEXIS 21614 (E.D.N.Y.) full statutory damages of $10,000.00 were awarded against each defendant. In Cablevision v Maxie's, 1991 U.S. Dist. LEXIS 4874 (E.D.N.Y.), and Cablevision v. Titan's, 1997 U.S. Dist. LEXIS 23663 (E.D.N.Y.) $5,000.00 was awarded in statutory damages.

After trial Judge Chin of the Southern District of New York stated the following:

> "Some courts considering similar facts have imposed damages based on a fixed amount per patron. See, e.g., *Garden City Boxing Club, Inc. v. Salcedo, 2005 U.S. Dist. LEXIS 26478, No. 04 Civ. 5027, 2005 WL 2898233 ( S.D.N.Y. Nov. 3, 2005)* ($300.00 per patron); *Time Warner Cable v. Goodies Luncheonette, Inc., 77 F. Supp. 2d 485 (S.D.N.Y 1999)* ($50.00 per patron). Others have awarded a flat sum. See, e.g., *Garden City Boxing Club, Inc. v. Guzman, 2005 U. S. Dist. LEXIS 7954, No. 03 Civ. 8776, 2005 WL 1153728 (S.D.N.Y Apr. 26, 2005 )*($5,000.00); *Kingvision Pay-Per-View, ltd. v. New Paradise Rest., 2000 U. S. Dist. LEXIS 8792, No. 99 Civ. 10020, 2000 WL 378053 (S.D.N.Y. Apr. 11, 2000)* ( $20,000). On motions for entry of default in cases involving this plaintiff and this fight I have awarded statutory damages of $5,000.00 for a violation of *Section 605 (e)(3)(C)(i)(II)* and an additional $5,000.00 for violations that were willful and for commercial gain. See, e.g. Garden City Boxing Club v. Rosa, No. 05 Civ. 6233 (DC); Garden City Boxing Club v. Ruiz, 05-Civ. 3408 (DC).
>
> Here, the commercial rights for the de la Hoya/Hopkins fight would have cost Luischia approximately $2,000.00. In addition, I find that, more likely than not, one of the reasons defendants exhibited the fight was to realize increased profits from the sale of food and beverages, which profits should be disgorged. Finally, plaintiff is entitled to an enhancement of damages due to my finding that the defendants' conduct was willful and for commercial gain, although I am mindful that defendants run a small business, their profit from exhibition of the fight was likely minimal, and, although the amount of damages should be an adequate deterrent, the violation is not so serious as to warrant

putting the restaurant out of business. Accordingly, I find that an
award of an additional $10,000.00 ( for a total of $12,000.00) is
fair and just, in light of all the circumstances."

See Garden City Boxing Club, Inc., v. Luis Polanco and Luischia Restaurant Corp., 2006 U. S.

Dist. LEXIS 5010 at *15-*17 (S.D.N.Y. February 7, 2006), *aff'd on other grounds*, 2007 U.S.

App. LEXIS 8706, (2nd Cir. Apr. 5, 2007).

Enhanced damages are regularly awarded for this type of violation in the Eastern

District. In Mama Zee and Batista $10,000.00 in enhanced damages was awarded based on the

willfulness of the act. Similarly in Roopnarian, $10,000.00 in enhanced damages was awarded

based on Defendant's willful disregard of the statute and applicability of the enhanced damages

award to the commercial setting. In Titan's and in Taco Rapido only $5,000.00 in enhanced

damages was awarded. In Cablevision v. Maxie's, 1991 U.S. Dist. LEXIS 4873 (E.D.N.Y.)

$25,000.00 in enhanced damages was awarded. In t his instance, Plaintiff has submitted evidence

of this Defendant's willful disregard for the law. Attached hereto, as Exhibit "B" is the Affidavit

of Costs and Fees, which details the Defendants' additional piracies.

The Court in Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc., 219 F. Supp. 2d

769, 2002 U.S. Dist. LEXIS 16247 (S.D. Tx. 2002), noted that deterrence is one of the goals of

47 U.S.C. §605 and that to require the offending establishment to pay the price it would have

paid had it legally contracted to exhibit the event "would do nothing to accomplish this objective

of the statute." Id. at 776. The Court further addressed willfulness in its opinion, awarding

enhanced damages:

Based on the limited methods of intercepting closed circuit
broadcasting of pay-per-view events and the low probability
that a commercial establishment could intercept such a
broadcast merely by chance, however, courts have held conduct

> such as that of [defendant] in this case to be willful and for the
> purposes of direct or indirect commercial advantage or private
> financial gain.

Id. at 776 (citations omitted). The Court noted that "willfulness has been defined by the Supreme

Court as 'disregard for the governing statute and an indifference for its requirements.'"

Cablevision Sys. N.Y. City Corp. v. Lokshin, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting

Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126, 83 L. Ed. 2d 523, 105 S. Ct. 613 at

613027 (1985)).

The Southern District of New York has held that "Signals do not descramble

spontaneously, nor do television sets connect themselves to cable distributions systems." Time

Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485 (S.D.N.Y.

1999). This premise was also adopted by this Court Roopnarain, decided February 8, 2002, in

which Magistrate Judge Azrack gave an additional $10,000.00 award for wilfulness.

Plaintiff urges that the maximum amount of statutory damages under 605(e)(3)(C)(i)(II),

$10,000.00 be awarded in this case following Mama Zee, Batista and Roopnarain. Plaintiff

further urges that substantial enhanced damages be added to it pursuant to 605(e)(3)(C)(ii) of up

to $100,000.00, particularly in light of the fact that Defendant is a repeat violator of the Federal

Communications Law. In deference to Plaintiff Counsel's obligation to zealously represent its

client, the prayer below includes a prayer for the full statutory amount available to the Plaintiff.

## FEES AND COSTS

The Federal Communications Act provides that full costs, including attorney fees shall be

awarded to an aggrieved party who prevails. Joe Hand Promotions, Inc, is an aggrieved party in

this case because it had a proprietary interest in the intercepted communications. Garden City

Boxing Club v. Ayisah, 2004 U.S. Dist. 7687 (S.D.N.Y.)  Plaintiff has expended filing fees,

service of process costs, attorney fees, and investigative expenses pursuing this case. Garden City

Boxing Club v. Guzman, 2005 U.S.Dist. LEXIS 7954 (S.D.N.Y.), Kingvision v. Medrano, 2004

U.S. Dist. LEXIS 13282 (S.D.N.Y.),  Kingvision v. Recio, 2003 U.S. Dist. LEXIS 10440

(S.D.N.Y.),  Time Warner Cable v. Evans, 2001 U.S. Dist. LEXIS 16402(S.D.N.Y.),  Joe Hand

Productions v. West, 2000 U.S. Dist. LEXIS 15711 (W.D.N.Y.), Main Event v. Batista, 1999

U.S. Dist. LEXIS 2250, 1998 U.S. Dist. LEXIS 21492 (E.D.N.Y.),.

## CONCLUSION

Plaintiff is entitled to a default judgment against Defendants holding them liable for a

sum, in the discretion of the court of up to the sum $110,000.00 for violation of 605(a).  Plaintiff

is also entitled to full litigation costs and attorney fees. Pursuant to Rule 54(b) of the Federal

Rules of Civil Procedure, there is no just reason for delay in these default judgments as the

interest of justice require the issuance of judgment as requested without further delay.

**WHEREFORE,** your deponent respectfully requests that this Court in its discretion grant judgment by default under 605(a) on COUNT I of the Plaintiff's complaint against the Defendants as follows:

### Against, RICARDO MARTINEZ, Individually and d/b/a LUCKY 7,

1) under 605(e)(3)(C)(i)(II) a  sum *in the discretion of the Court*, of up to TEN THOUSAND DOLLARS ($10,000.00)

2) and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of up to ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3) and under 605(e)(3)(B)(iii) *in the discretion of the Court*, costs and Attorney fees of ONE THOUSAND THREE HUNDRED SIX DOLLARS AND TWENTY FIVE CENTS ($1,306.25).

Dated: November 30, 2007
Ellenville, NY 12428

/s/ Julie Cohen Lonstein
Julie Cohen Lonstein, Esq.
Bar Roll No. JL8512
Lonstein Law Office, P.C.
Attorneys for Plaintiff
1 Terrace Hill; PO Box 351
Ellenville, NY 12428
Telephone: 845-647-8500
Fax: 845-647-6277

## CERTIFICATE OF SERVICE

The undersigned certifies that on today's date, a copy of the foregoing was served via regular mail  upon the following:

Ricardo Martinez
1203 Findlay Avenue
Apt. 33A
Bronx, NY 10456-4143

/s/ Julie Cohen Lonstein.
Julie Cohen Lonstein, Esq.

Exhibit A

ECF CASE
JUDGE DANIELS

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------
JOE HAND PROMOTIONS, INC. , as
Broadcast Licensee of the **June 11, 2005**
**Tyson/McBride** Program,

                                        Plaintiff,

-against-

RICARDO MARTINEZ, *et al.,*
                                 Defendants.
----------------------------------------------------------------

**Plaintiff's Affidavit for Default**
Civil Action No. 07-CV-6907
HON. GEORGE B. DANIELS

COMMONWEALTH OF PENNSYLVANIA)
                                                    ) ss.:
COUNTY OF BUCKS                          )

JOE HAND, JR., being duly sworn, deposes and states the following:

1.      I am President of Plaintiff, Joe Hand Promotions, Inc., and as such am fully

familiar with the facts, circumstances and proceedings heretofore had herein.

2.      I make this affidavit in support of Plaintiff's request to recover statutory damages,

including litigation fees, investigative costs, and interest in the within request for

judgment by default.

3.      The Plaintiff purchased the territorial rights to exhibit the Tyson/McBride  fight

which was held on June 11, 2005. Our company thereafter marketed the sub-licensing of

the broadcast in the State of Louisiana for a fee. The agreement for exclusive rights to

distribute the said fight is attached hereto as Exhibit "A." The rate card for commercial

establishments is attached hereto as Exhibit "B."

4.     To explain the history of Plaintiff's claim, your deponent submits that shortly after the advent of Pay-Per-View broadcasts, of which our company stands at the forefront, we began to experience a serious erosion of the sales to commercial establishments throughout the United States of America. Thereafter, we endeavored to find out what was the basis for the erosion. Much to our disappointment, we discovered the root cause to be the piracy of our broadcasts by unauthorized and unlicensed establishments.

5.     In response, we embarked upon a program which was designed to identify and prosecute commercial establishments which stole our broadcasts.

6.     Joe Hand Promotions, Inc., obtained information from auditors who identified establishments that unlawfully exhibited our Program.

7.     Prior to the Tyson/McBride broadcast, Joe Hand Promotions, Inc., hired Signal Auditing, Inc. to contract with independent auditors who were assigned to identify establishments that unlawfully exhibited our Program.

8.     To insure that only illegal locations were visited by the auditors, a list of authorized and legal locations who paid the required fee to broadcast the Tyson/McBride fight which was held on June 11, 2005, was distributed to Signal Auditing, Inc., who, in turn, provided same to all of their contracting auditors prior to visiting any unauthorized locations on June 11, 2005. This list for the State of Louisiana is attached hereto as Exhibit "C".

9.     Defendant, RICARDO MARTINEZ, Individually and d/b/a LUCKY 7, did not purchase the rights to exhibit the event from my company.

10.     According to our files, Edgardo Rodriguez, one of the auditors,

visited Defendant's establishment, Lucky 7, located at 658 Prospect Avenue, Bronx, NY, at approximately 9:25 p.m., on February 3, 2007. He entered and observed one (1) television sets exhibiting a portion of the event to about 25 patrons in an establishment with a capacity of 100. The auditor's affidavit attesting to these facts is attached as Exhibit "D."

12.    We operate a family business which has paid millions of dollars for the rights to sell sub-licenses for boxing broadcasts and, with the increased frequency of signal piracy, our legal sales have eroded significantly.

13.    I have recently been informed, by a member of a bar owners association with whom I was conversing, and who was previously a legal customer, that he would no longer be purchasing the fights from my company at the legal broadcast rate. He said it was not out of disrespect for me or my family but sooner risk being caught as a pirate believing that even if he defaults the Court would only grant a small monetary judgment that would be difficult, if not impossible to collect upon. I was astounded at the brazen disregard such individuals have for the law not to mention the rights of my company.

14.    It is essential that I communicate to the Court that to the best of my knowledge this programming is not and cannot be "mistakenly or innocently intercepted." Some methods that a signal pirate can unlawfully intercept and broadcast such program illegally are as follows without limitation:

        A.    The use of a "blackbox" which is purchased for a fee and when installed on a cable TV line will allow for the descrambled reception of a pay-per-view broadcast, or

        B.    The purposeful misrepresentation of a commercial establishment as a residential property would allow the purchase of a pay-per-view

broadcast between the sum of $25.00 and $50.00, or

C.    The use of a illegal cable drop or splice from an apartment or home adjacent to the commercial establishment premises who would purchase the broadcast at a residential price and divert the program to the commercial establishment and/or

D.    The same initial actions being employed with respect to a "DSS Satellite Systems" or a "C-Band Satellite System."

These forms of satellite theft also involve the misrepresentation of a residential location, purchase of illegal unincryption devices, and/or the purchase of illegal satellite authorization codes which are readily available on the internet and in trade publications. Attached hereto and made a part hereof are various examples of same.

15.    Turning these facts to the matter before the Court I have been advised by counsel that the Court has the discretion in the awarding of damages for these nefarious and illegal activities.

16.    It is respectfully submitted to this honorable Court that the unchecked activity of signal piracy not only has resulted in my family's business suffering monumental damage, but also has a negative effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs are necessarily increased significantly by these illegal activities.

17.    We, at Joe Hand Promotions, Inc., believe that such acts of piracy have cost us millions of dollars in the last few years while at the same time causing a reduction in our lawful business resulting from the perceived lack of consequence for such unlawful interception.

18.    I therefore, humbly ask this Court to grant the allowance for statutory damages due to the fact that such actions are *per se* intentional and do not and cannot occur without the willful and intentional modification of electronic equipment, the business

misrepresentation of a commercial establishment as a residential one or, the removal of cable traps or devices designed to prevent such unauthorized exhibits.

**WHEREFORE,** your deponent respectfully requests that this Court in its discretion grant judgment by default under 605(a) on COUNT I of the Plaintiff's complaint against the Defendants jointly and severally as follows:

## Against RICARDO MARTINEZ Individually,

1) under 605(e)(3)(C)(i)(II) a sum *in the discretion of the Court*, <u>of up</u> to TEN THOUSAND DOLLARS ($10,000.00)

2) and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of <u>up to</u> ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3) and under 605(e)(3)(B)(I) *in the discretion of the Court*, full costs, reasonable attorney fees as set forth in the attorney affidavit.

## Against, LUCKY 7,

1) under 605(e)(3)(C)(i)(II) a sum *in the discretion of the Court*, <u>of up</u> to TEN THOUSAND DOLLARS ($10,000.00)

2) and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of <u>up to</u> ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3) and under 605(e)(3)(B)(I) *in the discretion of the Court*, full costs, reasonable attorney fees as set forth in the attorney affidavit

Dated: September *18th* 2007

JOE HAND JR.
President, Joe Hand Promotions, Inc.

Sworn to before me on this *18th* day
Of September, 2007.

Notary Public- State of Pennsylvania

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARGARET H. CICALESE, Notary Public
Lower Southampton Twp., Bucks County
My Commission Expires March 3, 2009

Exhibit A

# AGREEMENT
# MIKE TYSON BOUT
# June 11, 2005
### Submitted by Joe Hand, Jr., President
### Joe Hand Promotions, Inc.
### April 4, 2005

## INTRODUCTION

### Joe Hand Promotions, Inc. (JHP)

Our company is the largest closed-circuit commercial distributor in the United States with the capability to promote, administer and market closed-circuit events. We were the first to exhibit closed-circuit boxing events into racetracks, baseball stadiums, basketball arenas, correctional institutions, colleges and to our armed forces. The administration and control are a major part of the success of our closed-circuit promotion and no other company in the industry comes close to our administrative manpower and resources.

## GRANT OF RIGHT

JHP proposes to exclusively administrate the closed circuit commercial distribution of the June 11, 2005 Mike Tyson Bout. The territory will be described as the United States, its Possessions and Territories, Canada, Puerto Rico and the territory listed on Exhibit "A" of this agreement proposal.

## ADMINISTRATION.

JHP will prepare all documentation necessary to meet the legal requirements of the closed-circuit distribution, including but not limited to:

* Preparing licenses and technical documentation for each location.

* Distribution of marketing and promotional materials.

* Collection of all funds and preparation of sales and revenue reports in a timely and orderly fashion.

## MARKETING

### Sales

JEP will utilize marketing materials (posters, ad slicks, press kits, etc.) provided by SHOWTIME (if available). These materials will be used to maximize customer awareness of the June 11, 2005 Mike Tyson Night.

JEP will provide direct marketing, such as mailing pieces, blast faxes, bulk e-mails and other forms of advertising to create awareness of the program.

JEP maintains a residence sales force of 12 people at our Beasterville location and plans to utilize other companies throughout the country that will assist in selling this program. Sales personnel are provided with complete documentation on potential customers including, names, locations, buying history, size of establishment, etc, in order to help them complete the sale,

It is our intention to utilize the services of other regional closed circuit distribution to 'maximize the sales and distribution efforts on this program." Any such company will be bound under the same terms and conditions listed in any contract between JEP and SHOWTIME.

### Security and Audit

JEP will make a concerted effort to discourage the theft of service. In an effort to protect our closed circuit broadcast rights, JEP will coordinate and finance its own piracy program. JEP will retain all revenue generated from said piracy campaign.

## MUTUAL OBLIGATIONS

### SHOWTIME

SHOWTIME will provide JEP with reasonable quantities of promotional materials including posters, ad slicks and press kits, if available.

For digital dish commercial customers, SHOWTIME will grant JEP permission to enter into agreements with DirecTV and Dish Network to act as authorization source for its commercial location customer utilizing that technology to broadcast the event. 'In some instances, JEP will ask SHOWTIME to assist in its

negotiations with these digital authorization sources in order to reach an agreement on terms for authorizing the requested commercial account.

For *cable feed commercial customers*; SHOWTIME will grant JHP the right to enter into agreements with individual cable system operants to act as authorization sources for its commercial customers utilizing that technology to broadcast the event.

## JOE HAND PROMOTIONS

JHP will be responsible for all duties and obligations as outlined in this agreement.

---

## FINANCIAL

As compensation for these exclusive rights, JHP will pay SHOWTIME ~~the amount~~ of all revenues (less local & state taxes).

Prepared by:

Joe Hand Promotions
4070 Pennsylvania Blvd.
Feasterville, PA. 19053
215-364-9000 phone
215-364-5474 fax
joeh@joehandpromotions.com

Agreed to & Accepted by:

Showtime Networks Inc.
1633 Broadway
New York, NY 10019
212-708-1289 phone

Joan.McLean@showtime.net



# SPORTS PRODUCTIONS INC.

1 - 888 - 256 - 7116

June 23, 2005

Joe Hand Promotions, Inc.
407 East Pennsylvania Avenue
Feasterville, Pennsylvania 19053

Attn: Joe Hand, Jr

Re:  Gatti vs. Mayweather
     June 25, 2005

Dear Joe:

This will confirm the terms of our agreement whereby J & J Sports Productions, Inc. ("J&J" or "promoter") for consideration, hereby grants to you ("you" or "licensee") the right to license, market, exhibit and sell, only within your defined territory within the United States of America (the "territory"), promoter's live telecast of the June 25, 2005 Gatti v. Mayweather program and accompanying undercard matches (each a "program" or "event"), simultaneously with each event, only at commercial closed circuit television exhibition outlets, such as theaters, bars, clubs, lounges, restaurants and the like, each with a fire code occupancy capacity not to exceed 500 persons per outlet (except for casinos), located within the territory.  Your territory shall include the following:

Connecticut, Delaware, District of Columbia, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Vermont, Virginia, West Virginia and Wisconsin.

These rights also include the anti-piracy rights, including but not limited to the rights to resolve claims and commence litigation against any identified pirate shipping any portion of the "program" without purchasing the license to exhibit same from you or any approved licensee of J & J Sports Productions, Inc.

Joe Hand Promotions
Fonsterville, Pennsylvania
Page 2 of two

Very truly yours,

J & J Sports Productions, Inc.

Joseph Gagliardi
President

JG:c

Exhibit B

# *Mike Tyson*

**(50-5, 44KO's)**
*Vs*

# *Kevin McBride*

**(32-4-1, 27KO's)**

## LIVE ON CLOSED CIRCUIT TV

# Saturday, June 11, 2005

## Live from MCI Center – Washington DC
*(blackout in effect)*
## 9:00 pm ET

Undercard Featuring the sensational Laila Ali

## RATECARD

### $10.00 x's fire code capacity

### $20.00 per person for casinos

*(Plus $200 DirecTV Authorization Fee)*

Call Joe Hand Promotions to order!

800-557-4263

Visit our website at www.joehandpromotions.com

Exhibit C

| Name | Address | City | State | Code | Value | Date |
|---|---|---|---|---|---|---|
| | | Albany | NY | 12007 | | |
| | | Albany | NY | 12007 | | |
| Ujllana @ Albany | 68 N. Pearl St. | Albany | NY | | 11161 FALSE | 6/11/2005 |
| Ujllaus @ Albany | 68 N. Pearl St. | Albany | NY | | 11105 FALSE | 6/11/2005 |
| Ujllaus | 50 North Pearl St. | Astoria | NY | | 11217 | |
| Fanon | 3649 Steinway St. | Astoria | NY | | 11217 | |
| McClann | 3650 Ditmars Blvd | Brooklyn | NY | | 11789 FALSE | 6/11/2005 |
| 200 Fifth | 200 5th Ave. | Brooklyn | NY | | 11359 FALSE | 6/11/2005 |
| Ujllaus @ Farmingdale | 291 Airport Plaza Blvd. | Farmingdale | NY | | 11787 FALSE | 6/11/2005 |
| Antelo Gnazzi | 33-31 161 Street | Flushing | NY | | 10010 FALSE | 6/11/2005 |
| Dukes Martini Corner | 710 5th. St. | Lindenhurst | NY | | 10022 FALSE | 6/11/2005 |
| 40 40 Club | 6 West 25th St. | New York | NY | | 10009 FALSE | 6/11/2005 |
| Chaneys @ New York | 578 2nd. Ave. | New York | NY | | 10001 FALSE | 6/11/2005 |
| Navada Smiths | 74 Third Ave. | New York | NY | | 10023 FALSE | 6/11/2005 |
| Playwright | 202 W. 48th St. | New York | NY | | 14304 | |
| Stones @ New York East | 583 EastSmith Street | New York | NY | | 14305 FALSE | 6/11/2005 |
| Stones @ West | 583 West 27th St. | New York | NY | | 11770 | |
| Ship O Fools | 1460 Second Ave. | Niagara Falls | NY | | 14600 FALSE | 6/11/2005 |
| James | 72B2 Buffalo Ave. | Niagara Falls | NY | | 10309 | |
| Playwrits of Niagara | 921 Niagara St. | Ocean Beach | NY | | 10308 | |
| Sun Moon @ Stars | 211 Bayswalk | Rochester | NY | | | |
| Bartindes | 281 Exchange Blvd. | Staten Island | NY | | 11104 FALSE | 8/11/2005 |
| Lions Den Sports Bar | 17 Page Ave. | Staten Island | NY | | 14224 FALSE | 6/11/2005 |
| Lions Den Sports Bar | 17 Page Ave. | Sunnyside | NY | | 11590 FALSE | 6/11/2005 |
| Full of Pep | 4428 Greenpoint Ave. | West Seneca | NY | | 10704 FALSE | 6/11/2005 |
| Dulls | 8080 Orchard Park Rd | Westbury | NY | | | |
| Ujllaus @ Westbury | 1604 Old Country Rd. | Yonkers | NY | | | |
| Comb Tavern | 1044 Yonkers Ave. | | | | | |

<u>PIRACY AFFIDAVIT</u>

STATE OF NEW YORK :

COUNTY OF NEW YORK :


I, Edgardo Rodriguez, the undersigned, being duly sworn according to law, deposes and says, that on <u>Saturday, June 11, 2005,</u>, I observed and the commercial establishment known as, <u>LUCKY 7,</u> located at <u>658 Dawson Street</u> <sup>(E4)</sup> BRONX, N.Y. 10455, at approximately <u>09:25</u> p.m. This establishment is described as a <u>4</u> story building with numerous apartments on top of the establishment.

I observed <u>01</u> television set, showing the event, which is described and located as follows: <u>A 32 inch color television set behind the bar and in the center.</u>

The television set I observed showed the following: <u>The lower right of the screen showed 2:20 left in round 3 of the Smith an Mitchell fight. Smith is wearing red trunks and black gloves. Mitchell is wearing black and gold trunks with black gloves. Both men are fighting in a blue boxing ring with red, white, and blue ropes.</u>

I was unable to see the cable box or the channel that the television was tuned to.

The inside of the establishment and its internal layout can be described as: <u>A typical licensed establishment that serves alcohol, with chairs and tables.</u>


DRAW DIAGRAM OF INSIDE OF ESTABLISHMENT:




In my opinion, the approximate capacity of this establishment is <u>100</u> people. At the time I was in the establishment, I took three head counts. I counted approximately <u>25</u> people on the first count, <u>25</u> people on the second count, and <u>25</u> people on the third count.

I left the establishment at approximately <u>09:30</u> p.m.

I took two (2) pictures of the outside of the above described establishment on <u>Tuesday, June 14, 2005</u> at approximately 8:00 a.m. which are attached hereto and made a part hereof and are intended to substantiate and verify the location of my observations as described herein.

There was not a parking lot adjacent to the establishment.

Dated: _6/30_____, 2005

Signed: _____
Print Name: Edgardo Rodriguez
Agency:
Address:       218 Grange Road
City/State/Zip: Otisville, NY 10963
Phone/fax:     (646) 423-2354

State of New York:

County of New York:

On the 20th day of June_____, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared, Edgardo Rodriguez, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

RAFAEL A. CAPELLAN
Notary Public, State of New York
Reg. No. 01CA6077760
Qualified in Orange County
My Commission Expires July 15, 2006



DSC01300.JPG

05-7-SO4



DSC01306.JPG

Exhibit B

ECF CASE
JUDGE DANIELS

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------

**JOE HAND PROMOTIONS, INC.,** as
Broadcast Licensee of the **June 11, 2005**
**Tyson/McBride Program**

                    Plaintiff,

-against-

RICARDO MARTINEZ, Individually and d/b/a
LUCKY 7,
          Defendants.
----------------------------------------------------------------

STATE OF NEW YORK :
               : SS.:
COUNTY OF ULSTER  :

          **AFFIDAVIT OF ATTORNEY COSTS
          AND FEES**
          Civil Action No. 07-CV-6907
          HON. GEORGE B. DANIELS

        JULIE COHEN LONSTEIN, being duly sworn, deposes and says:

        1.    That I am the attorney for Plaintiff, Joe Hand Promotions, Inc., in the above

referenced matter and I am admitted to practice in this Court. I am fully familiar with all the

facts, circumstances and proceedings heretofore had herein.

        2.    I make this affidavit in support of Plaintiff's motion for default judgment and

damages, costs and fees.

        3.    Plaintiff's litigation expenses as associated with the formation, pleading and filing

of the above captioned matter are as outlined below:

                a.      Filing Fees -  $ 350.00

                b.      Service of Process - $ 100.00
                            Attached hereto as Exhibit "A," please find invoice from Mountain
                            Support Services, Inc., reflecting the cost of service upon the Defendants.

                c.      Attorneys Fees - $856.25
                            See below

            Total Litigation Expenses ..............................($1,306.25)

4.    Attorney fees at $200.00 per hour for attorney time spent and $75.00 for paralegal time spent are as follows:

| Date | Action | (in hours) | Fee | |
|------|--------|-----------|-----|---|
| 07/12/2005 | Factual research and development | .25 | $50.00 | Atty |
| 08/09/2005 | Claim Letter issued | .25 | $18.75 | Para |
| 01/03/2006 | Auditor Certification | .25 | $18.75 | Para |
| 07/11/2007 | Factual research | .25 | $50.00 | Atty |
| 07/25/2007 | Complaint drafted, Corporate disclosure | .5 | $100.00 | Atty |
| 07/25/2007 | Complaint sent to Court | .5 | $37.50 | Para |
| 08/08/2007 | Arranged Service | .25 | $18.75 | Para |
| 08/08/2007 | Sent CC of S & C to Chambers | .25 | $18.75 | Para |
| 08/17/2007 | Review Order | .12 | $25.00 | Atty |
| 08/20/2007 | Ltr to Defendants with Order | .25 | $18.75 | Para |
| 08/31/2007 | Reviewed Service | .13 | $25.00 | Atty |
| 08/31/2007 | Filing/mailing Proofs of Service | .25 | $25.00 | Para |
| 10/05/2007 | Prepared Request for Default | .5 | $100.00 | Atty |
| 10/05/2007 | Filed/mailed RFD | .5 | $37.50 | Para |
| 10/05/2007 | Motion for Continuance | .25 | $50.00 | Atty |
| 10/05/2007 | Filed and Mailed Motion | .25 | $18.75 | Para |
| 10/10/2007 | Review Court Order | .12 | $25.00 | Atty |
| 10/11/2007 | Review Clerk Certificate of Default | .13 | $25.00 | Atty |
| 10/15/2007 | Draft Motion for Default | 1.00 | $200.00 | Atty |

|  |  | **Hours** | **Fee** | |
|---|---|---|---|---|
|  |  | **3.25** | **Atty $650.00** | |
|  |  | **2.75** | **Para $206.25** | |

**Total**                    **$856.25**

5.    Plaintiff's counsel's files contain an affidavit attesting to the Defendant's piracy of

another event. On June 25, 2005, independent auditor, Richard Rodriguez, entered the

Defendant's establishment and observed a portion of the Gatti/Mayweather program being

exhibited to approximately 10 individuals in an establishment with an estimated capacity of 75.

The auditor's affidavit is attached hereto as Exhibit "B".

6.    Plaintiff's counsel's files contain an affidavit attesting to the Defendant's piracy of a third

 event. On June 10, 2006, independent auditor Jeanette Rodriguez, entered the Defendant's

establishment and observed a portion of the Tarver/Hopkins program being exhibited to

approximately 8 individuals in an establishment with an estimated capacity of 60. The auditor's

affidavit is attached hereto, as Exhibit "C".


6.    We respectfully request  that judgment be entered in favor of Plaintiff and against the
 Defendants in the manner stated herein.

        **WHEREFORE,** your deponent respectfully requests that this Court in its discretion
grant a  judgment by default under 605(a) on COUNT I of the Plaintiff's complaint against the
Defendants jointly and severally as follows:

### Against, RICARDO MARTINEZ, Individually and d/b/a LUCKY 7,

    1)    under 605(e)(3)(C)(i)(II) a  sum *in the discretion of the Court*, of <u>up to</u> TEN
          THOUSAND DOLLARS ($10,000.00)

    2)    and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of <u>up to</u> ONE
          HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for
          Defendant's willful violation of 605(a)

    3)    and under 605(e)(3)(B)(iii) *in the discretion of the Court*, costs and Attorney fees
          of ONE THOUSAND THREE HUNDRED SIX DOLLARS AND TWENTY
          FIVE CENTS ($1,306.25).

Dated: October 15, 2007
    Ellenville, NY 12428

/s/  Julie Cohen Lonstein
Julie Cohen Lonstein, Esq.
Bar Roll No. JL8512
Lonstein Law Office, P.C.
Attorneys for Plaintiff
1 Terrace Hill; PO Box 351
Ellenville, NY 12428
Telephone:  845-647-8500
Facsimile:   845-647-6277

Sworn to before me this 15TH
day of October  2007.

/s/ April Draganchuk
**April Draganchuk**
**Notary Public State of New York**
**Registration  No. 4945872**
**Residing in Ulster County**
**My Commission Expires Jan. 27, 2011**

Exhibit A

Mountain Support Services

# Invoice

1 Terrace Hill
P.O. Box 615
Ellenville, NY 12428

| Date | Invoice # |
|------|-----------|
| 9/20/2007 | 1111 |

| Bill To |
|---------|
| Lonstein Law Office, PC<br>Wayne D Lonstein<br>1 Terrace Hill<br>P.O. Box 351<br>Ellenville, NY 12428 |

| Description | Amount |
|-------------|--------|
| INDIVIDUAL SERVICE<br>JHP v. RICARDO MARTINEZ<br>YOUR FILE #05-7-S04<br>CV #07-6907 | 100.00 |
| **Total** | $100.00 |

Exhibit B

## PIRACY AFFIDAVIT

**STATE OF NEW YORK  :**

**COUNTY OF NEW YORK    :**

I, Richard Rodriguez, the undersigned, being duly sworn according to law, deposes and says, that on Saturday, June 25, 2005 I observed, the commercial establishment known as Lucky 7, located at 658 Prospect Ave , Bronx, NY  at approximately 9:12 PM.  This establishment is described as a 3 story building with   residential apartments above.

I observed 01 television set  showing the event, which is described  as follows:  One 27 inch color television set located behind the bar at the rear of location.
On the television sets, I observed Round 2 of the Calderon/Verde event. Calderon is shown wearing silver trunks w/ rted and blue trim. Verde is wearing green trunks. The ropes around the ring are red, white and blue. The fighters are on a blue mat with yellow writing. The clock on the lower right corner reads 2:12 of Round 2.

I was not able to see the cable box or the channel that the television was tuned to.

The inside of the establishment and its internal layout can be described as: A typical licensed establishment that serves alcohol .

DRAW DIAGRAM OF INSIDE OF ESTABLISHMENT:



In my opinion, the approximate capacity of this establishment is 75 people.  At the time I was in the establishment, I took three head counts.  I counted approximately 10 people on the first count, 10 people on the second count, and  10 people on the third count.

I left the establishment at approximately 9:15 p.m.

I took two (2)  pictures of the outside of the above described establishment  which are attached hereto and made a part hereof and are intended to substantiate and verify the location of my observations as described herein.

There was not a parking lot adjacent to the establishment.

Dated: ___July  2___, 2005

              Signed: _____

              Print Name:    Richard Rodriguez
              Address:       90 Conners Road
              City/State/Zip:   Middletown, NY 10941
              Phone/fax:    (917)716-3439

State of New York)
          ) ss.:
County of Bronx  )
On the _2_ day of __July__, 2005, before me, the undersigned, a Notary Public in and for said State, personally appeared, Richard Rodriguez, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                    _____
                    Notary Public

                OLGA RODRIGUEZ
           Notary Public, State of New York
                  No. 3-6958
             Qualified in Bronx County
        Commission Expires _____, 2007

Exhibit C

## PIRACY AFFIDAVIT

STATE OF            :
                   : SS.:
COUNTY OF          :

     I, the undersigned, being duly sworn according to law, deposes and says, that on **Saturday, June 10, 2006,** I entered the commercial establishment known as **Lucky 7,** located at **658 Prospect Ave, Bronx, NY** at approximately 10:25pm. This establishment is described as a 4 story building with numerous apartment(s) on top of the establishment. I did not observe a satellite dish on the premises.

I observed **01** television sets, which are described as: size36 inch color which is located in the following position within the establishment: behind the bartender on the counter.

On the television sets, I observed the1st **round** of the boxing match between the following undercard fighters Hernandez vs. Israel Vasquez.

**Israel Vasquez** was wearing red trunks w/ white stripes and white lettering and **Hernandez** was wearing red trunks w/ white stripes and lettering.  I also observed **the following action in the ring:** Vasquez had blonde hair on top of his head. Both fighters were on a blue mat with yellow writing. The clock on the lower right corner showed Round 1 with less than a minute left in the round.

I also observed the following Pay Per View Logo on the screen: On the lower right corner in gold, black and red.

I  **was not** to see the cable box or the channel that the televisions were tuned to.

The inside of the can be described as follows: **A typical bar with with one female bartender serving drinks to patrons sitting in bar chairs watching the event.**

Piracy Affidavit    **Page -2-**

In my opinion, the approximate capacity of this establishment is **60** people. At the time I was in the establishment, I took three head counts. I counted approximately **8** people on the first count, **8** people on the second count, and **8** people on the third count.

I left the establishment at approximately **10:30.**

I took two (2) pictures of the outside of the above described establishment **on June 17, 2006 and at approximately 7:00am** which are attached hereto and made a part hereof and are intended to substantiate and verify the location of my observations as described herein.

There was not a parking lot adjacent to the establishment.

Dated: _7/11_____, 2006

Signed: _____

Print Name:    Jeanette Rodriguez
Agency:
Address:    90 Conners Road
City/State/Zip:    Middletown, NY 10941
Phone/fax;    (914)850-2769
PI #

State of _New York_ )
                          ) ss.:
County of _New York_ )
On the _11th_ day of ___July___, 2006, before me, the undersigned, a Notary Public in and for said State, personally appeared, Jeanette Rodriguez, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public _____

YANIRIS Y. COLLAZO
Notary Public, State of New York
No. 01CO6106312
Qualified in Bronx County
Term Expires March 1, 2008



06-11-502